### UNITED STATES v. BICKFORD.
No. C–2956.

United States District Court
D. Arizona.

March 3, 1951.

Frank E. Flynn, U. S. Atty., and E. R. Thurman, Asst. U. S. Atty., both of Phoenix, Ariz., for plaintiff.

No attorneys for defendant.

McCOLLOCH, District Judge.

I have for consideration the petitions of defendant Bickford, at present an inmate in the United States penitentiary at Leavenworth, (1) for release from alleged illegal imprisonment, to-wit, a sentence of 20 years imposed by Chief Judge Dave W. Ling of this District, on June 16, 1947; (2) for writ of habeas corpus ad testificandum.

Defendant was indicted on two counts, Count One for violation of the Dyer Act, 18 U.S.C.A. §§ 2311–2313, maximum penalty five years, Count Two for violation of the Lindbergh Kidnaping Law, 18 U.S.C.A. § 1201, maximum penalty life imprisonment, with the possibility of death sentence where the victim is harmed. Defendant was sentenced on the indictment to 20 years. The ground for his motion to vacate the sentence is that his counsel had a motion attacking Count Two that was pending and undisposed of at the time defendant pleaded guilty and was sentenced; this being so, that he thought he was pleading guilty to Count One.

The docket entries refute the contention. The pertinent docket entries are:
1947

Apr. 7    Counsel for deft. now moves to dismiss Count 2 for failure to charge offense and reserves plea until ruling thereon. Motion argued and submitted. Order continue for plea until after ruling on motion to dismiss.

Apr. 14    Order deny defts' Mo. to dismiss Ct. 2 of ind. Further order set for plea Tuesday, Apr. 15, 1947.

Apr. 15    On reg. for plea as to each deft. Thurman for Govt. Defts. pres. with Ronald Webster, Jr. Each deft. now png; order set for trial June 12, 1947 at Phoenix.

June 12    On reg. for trial as to each deft. E. R. Thurman pres. for Govt. Deft. Carson pres. with counsel L. A. Riggs and withdraws png and pg as charged. Deft. Bickford pres. with counsel Ronald Webster and withdraws png and pg as charged. Order set for sent. as to ea. deft. Monday, June 16, 1947.

Point 2 of the petition disparages the efforts of court-appointed counsel in petitioner's behalf. The official reporter's transcript refutes the contention.

Point 3, re venue, is entirely without merit. Petitioner pleaded guilty to kidnaping three people in Nevada and transporting them under duress into Arizona.

Point 4—that the sentence is indefinite and uncertain. It is the definiteness and certainty of the sentence to 20 years' imprisonment that petitioner is complaining about.

I hold therefore that the petitions and the files and records of the case conclusively show that the petitioner is entitled to no relief. 28 U.S.C.A. § 2255. Barrett v. Hunter, 10 Cir., 180 F.2d 510.

The petition for release and the petition for writ of habeas corpus are denied.

### Addendum

Some straight talk about the petitions in the federal courts by habitual criminals seeking to obtain their release is to be found in a recent Per Curiam opinion in the Ninth Circuit, in which my colleague

in the Oregon District Court participated. Tate v. People, 9 Cir., 187 F.2d 98. And see Livers v. United States, 6 Cir., 185 F.2d 807, where a sentence of 75 years was imposed (and upheld) in a kidnaping case very similar to the one at bar.

Speaking of what has been going on in the federal field regarding law violators, United States Circuit Judge Homer Bone recently mentioned "the sense of frustration and futility which now assails so many law abiding people as they contemplate the failure of the law to bring obvious criminals to justice." Carignan v. United States, 9 Cir., 185 F.2d 954, 955, 962.

Consider the facts in the present case: the defendant and another forced their way into an automobile on the streets of Las Vegas, Nevada. A man, his wife and his 13 year old daughter were in the car. This was about ten o'clock at night. Defendant and his co-defendant, after robbing the victims, forced the car owner at pistol point to drive the car all night east out of Nevada and 350 miles into Arizona, making repeated threats to kill husband, wife and daughter and to rape the women.

One or two quotes from the FBI file:

"————— advised that after the first stop was made in Arizona for gasoline, she and ————— were taken several yards away from the highway by Slim and were made to lie down out of sight. At this time Slim told her he was going to have intercourse with her, held a gun to her head, and was prepared to forcibly rape her, but was unable to do so because at that time the car returned with ————— and Bert in it. She stated that Slim at this time had pulled her dress up and under clothing down and had disrobed himself enough to accomplish his purpose.

"————— stated that at this time she was forced to lie on a cactus and was told by Slim to turn her head during the time he was going to rape her mother. ————— also stated that between the first and second stops for gasoline Slim on one occasion attempted to raise her dress and pull down her underclothing. She said she pushed his hand away and Slim said, 'Am I going to have to get rough?' However, according to ————— he never did harm her, get rough, nor did he ever make any further attempts to rape her."

"At junction of Highways 66 and 89, subjects forced ————— to stop momentarily while they apparently debated in whispers. From snatches of conversation overheard it was apparent to victims that subjects intended to kill the victims. They then directed ————— to drive northward on Highway 89. ————— did so and drove about five miles, where 'Bert' ordered him to stop. After looking at the terrain for a few minutes, 'Slim' was heard to remark by all victims, 'No, we can't do it here, this will be messy and they would be found too soon'. 'Bert' then took the wheel, went south on 89 and then eastward on 66. Another stop was made for gasoline at about 11:00 a.m. After questioning subjects as to time element between the station and where they were let out, and as to what direction the San Francisco Peaks (only snow covered mountains visible on November 28, 1946) it appeared that this station must be located on the north side of the highway somewhere between Padre Canyon and Winslow. After gasoline was purchased at this station 'Bert' drove the car eastward on Highway 66 to where there is a highway sign pointing south on a dirt road across the desert. According to victims this sign said Penzance. (Penzance is not a town but a section point on the Santa Fe Railroad). The victims were driven about ¾ mile south on this road into the desert where they were let out. Discussion was had between subjects as to tying victims up; however, this was abandoned when no material could be found to tie up victims. Bert found a small piece of chalk line, apparently in the car, and used this to put a leash on victims' puppy bulldog who had made the trip with them. Victims were warned not to secure a ride, and subjects said they would leave the car in Holbrook for them. Subjects then left, with 'Bert' driving, and were observed to turn eastward on Highway 66. Victims then started to Holbrook and walked most of the distance * * *."

The FBI report on this man shows 14 prior arrests beginning in 1921, including one rape charge and two charges of lewd and lascivious conduct.

Quoting again from the FBI report: "The attention of the United States Attorney is directed to the report of Special Agent Warren R. Hearn dated January 24, 1947, at San Francisco, which sets forth information pertaining to a previous arrest of subject Bickford wherein he was sentenced to a term of one year to life for lewd and lascivious conduct with two small girls, ages three and one-half and four and one-half years, details and circumstances of Bickford's crime at that time being of an obscene nature and have been previously furnished to your office under a separate communication."

As the sentencing Judge well said, it was only an accident for which the defendant can take no credit that he was not subject to sentence of death, under the provisions of the Lindbergh Law.